## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**JAWANA SCOTT,**

    **Plaintiff,**

    **v.**

**SOCIAL INVOLVEMENT
MISSIONS, INC. individually and
d/b/a Indelible Impressions
Learning Center,**

    **Defendant.**

**CIVIL ACTION NO.
1:17-CV-4963-AT-CCB**

## FINAL REPORT AND RECOMMENDATION

Plaintiff Jawana Scott brings this action against Defendant Social Involvement Missions, Inc., individually and doing business as Indelible Impressions Learning Center, asserting claims of discrimination on the basis of her pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII), as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) (PDA), and Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq* (ADA), as well as retaliation claims under both Title VII and the ADA. Defendant has filed a motion for summary judgment, (Doc. 26), which Plaintiff opposes, (Doc. 30). Defendant filed a reply brief, (Doc. 31), and the Court held oral

argument on December 6, 2019. (Doc. 33). For the reasons that follow, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment, (Doc. 26), be **DENIED**.

## I.    FACTS

### A.  *Standards for Presenting Facts at Summary Judgment*

Unless otherwise indicated, the Court draws the following facts from Defendant's "Statement of Undisputed Facts," (Doc. 26 at 11–15) and Plaintiff's "Response to Defendant's Statement of Material Facts," (Doc. 30-1). Additionally, as indicated and as needed, the Court draws some facts directly from the record. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

For those facts submitted by Defendant that are supported by citations to record evidence, and that Plaintiff has not specifically disputed and refuted with citations to admissible record evidence showing a genuine dispute of fact, the Court deems those facts admitted, under Local Rule 56.1B. *See* LR 56.1B(2)(a)(2), NDGa. ("This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the

movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1(B)(1).").

The Court has excluded assertions of fact by either party that are immaterial, presented as arguments or legal conclusions, unsupported by a citation to admissible evidence in the record, or asserted only in the party's brief and not the statement of facts. *See* LR 56.1(B)(1), NDGa. ("The Court will not consider any fact: (a) not supported by a citation to evidence… (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's [or respondent's] statement of undisputed facts."). The Court has also viewed all evidence and factual inferences in the light most favorable to Plaintiff, as required on a defendant's motion for summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir. 1993). Plaintiff disputes some of Defendant's proffered facts, but many of those objections are over matters that are not necessarily material to the disposition of this case. Accordingly, the Court will not rule on each objection or dispute presented and will discuss those objections and disputes only when necessary to do so regarding a genuine dispute of a material issue of fact.

3

### B.  Material Facts

Indelible Impressions Leaning Center (IILC) is a pre-school ministry that provides childcare services. (Doc. 26-11 at 5). Plaintiff began working for IILC as a lead infant teacher in 2013. (Doc. 30-1 at ¶ 1). She reported to Uneeta Dennis.[1] (Doc. 27 at 113). Plaintiff was responsible for infants who were up to six months old. (Doc. 30-1 at ¶ 2). The parties dispute whether Plaintiff was "required" to be able to lift the infants, *see id.*, and while Defendant does not identify any specific piece of evidence setting forth the requirements of Plaintiff's job, Plaintiff testified that she had to lift the infants as part of her job, (Doc. 27 at 79; *see also* Doc. 30-1 at ¶ 3 (Plaintiff's admission that infants had to "be held and fed")). The weight range of the infants Plaintiff cared for is also relevant to this case, and Plaintiff testified that "[i]t's a possibility" that she would have infants that weigh up to 15 pounds and that "sometimes" a six-month-old could weigh over 15 pounds. (Doc. 27 at 77–78).

There is a dispute of fact regarding whether Plaintiff's infant class had—or at least was supposed to have—an assistant teacher. Defendant did not include

---

[1] Plaintiff's brief refers to Dennis by the last name "Davis," but Plaintiff's deposition and other documents in the record indicate that her last name is "Dennis." (*See* Doc. 27 at 113; Doc. 26-8).

any facts in its statement of material facts regarding this issue. Plaintiff, in her response to the statement of material facts, states that "each classroom is staffed with one full time lead teacher and a full time assistant teacher." (Doc. 30-1 at ¶ 3). In support, Plaintiff cites to IILC's website, which advertises that "[e]ach classroom is staffed by one full time lead teacher and a full time assistant teacher that floats among that age group." (Doc. 30-3 at 2). It is not entirely clear whether the statement on the website refers to the infant class—as opposed to classes for older children. *Id.* However, Defendant offers nothing in response other than a sentence in its reply brief stating that "[n]o class had a fulltime assistant." (Doc. 31 at 10). The fact is unaccompanied by any citation to evidence, so the Court will not consider it. LR 56.1(B)(1). There is, therefore, a dispute about whether Plaintiff had—or at least was supposed to have—a full time assistant teacher in her room. And on October 28, 2015, IILC's website listed a job opening for an assistant teacher. (Doc. 30-1 at ¶ 3; Doc. 30-4 at 2).

Approximately three years into her employment, Plaintiff notified IILC that she was pregnant. (Doc. 30-1 at ¶ 4). During the early stages of her pregnancy, Plaintiff had no restrictions and could completely perform all her job duties. *Id*. On or about September 8, 2015, Plaintiff notified IILC that her doctor had restricted her to lifting a maximum of 15 pounds. *Id.* at ¶ 5. A subsequent doctor's notice on

5

September 15, 2015, stated that it was not the doctor's "policy to recommend interruption of work duties or limit nonstrenuous activities as long as the patient's pregnancy is uncomplicated." *Id*. The September 15 notice advised that "the decision concerning continued employment during the remainder of the pregnancy was the responsibility of the employer and the patient." *Id*. at ¶ 6. Plaintiff asked to be accommodated by having a helper in her class, (Doc. 27 at 83, 109–10), and she "probably" also asked for light duty work, *id*. at 110–11. Plaintiff testified that there was an unfilled administrative position at the time that she made this accommodation request. *Id*. at 109–10. Defendant disputes that there was an administrative position open when Plaintiff made her request, but the deposition testimony that Defendant cites for this proposition does not support it. (Doc. 30-1 at ¶ 15). At best, it is disputed whether there was an open administrative position when Defendant made her accommodation request.

On September 15, Shawnte Johnson—an Elizabeth Church board member heavily involved with the running of IILC, (Doc. 27 at 42)—told Plaintiff that IILC could not grant her light duty work, (Doc. 30-1 at ¶ 10; *see* Doc. 26-7). Plaintiff sent Johnson a text message stating "if I lose my baby due to heavy lifting and a careless administrative staff, I won't be letting it ride," and that "this definitely can be a legal matter if handled wrong." (Doc. 31-1 at ¶ 10; *see* Doc. 26-15).

In a later conversation, Uneeta Dennis told Plaintiff that IILC was going to "put" Plaintiff "on FMLA" leave because she did not have vacation time or sick leave. (Doc. 30-1 at ¶ 11; Doc. 30-5 at 2). Dennis told Plaintiff: "So that will not only just keep you safe, but the children safe in the classroom, your baby as well. So we don't want any liabilities and the legal actions that you had mentioned to them that will arise or anything like that, okay." (Doc. 30-5 at 2). Plaintiff refused to voluntarily take FMLA leave and wanted to continue working until she delivered her baby. (Doc. 30-1 at ¶ 14). On October 28, 2015, IILC informed Plaintiff that she was on unpaid medical leave and/or FMLA leave. *Id*. at ¶ 13.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on December 15, 2015. (Doc. 26-12; Doc. 30-6). The EEOC sent Plaintiff's notice of right to sue on September 8, 2017, (Doc. 26-13), and she filed suit on December 6, 2017, (Doc. 1).

## II.    DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is authorized when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the

7

burden of demonstrating the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Baas v. Fewless*, 886 F.3d 1088, 1091 (11th Cir. 2018). The movant carries this burden by showing the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. In making its determination, the court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *See Crane v. Lifemark Hospitals, Inc.*, 898 F.3d 1130, 1134 (11th Cir. 2018).

Once the moving party has adequately supported its motion, the non-moving party must come forward with specific facts that demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party is required "to go beyond the pleadings" and to present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-moving party's case is insufficient to defeat a motion for summary judgment; rather, there must be evidence on which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-moving party cannot defeat summary judgment by relying upon conclusory assertions. *Holifield v. Reno,* 115 F.3d 1555, 1564 n. 6 (11th

Cir. 1997). Rather, "[a] party asserting that a fact…is genuinely disputed must support the assertion by…citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) (*en banc*) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.").

If a fact is found to be material, the court must also consider the genuineness of the alleged factual dispute. *Anderson,* 477 U.S. at 249–50. A factual dispute is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id*. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Moreover, for factual issues to be genuine, they must have a real basis in the record. *Matsushita*, 475 U.S. at 587. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id*. at 587 (internal quotation marks omitted). Thus, the standard for summary judgment mirrors that for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at

259 (internal quotation marks omitted).

When considering motions for summary judgment, the court does not make

decisions as to the merits of disputed factual issues. *See id.* at 249; *Ryder Int'l Corp.*

*v. First Am. Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir. 1991). Rather, the court only

determines whether there are genuine issues of material fact to be tried. Applicable

substantive law identifies those facts that are material and those that are irrelevant.

*Anderson*, 477 U.S. at 248. Disputed facts that do not resolve or affect the outcome

of a suit will not preclude the entry of summary judgment. *Id*.

### B.  Motion for Summary Judgment

In Count I of the complaint, Plaintiff alleges that IILC discriminated against

her on the basis of her pregnancy in violation of Title VII by not "limit[ing]

Plaintiff's classroom and the number of infants in her classroom as per the rules"

and by failing to provide her with an assistant. (Doc. 1 at ¶¶ 38–39). She alleges

that she lost wages as a result of Defendant's actions. *Id.* at ¶ 40. Count II alleges

that IILC discriminated against her based on her 15-pound lifting restriction, in

violation of Title I of the ADA, by not placing her in a different position and forcing

her to take FMLA leave. *Id.* at ¶¶ 42–46. Count III asserts claims for retaliation

under Title VII, the ADA, and the Retaliation Act for taking adverse employment

actions against her because she engaged in protected EEO activity. *Id.* at ¶¶ 50, 55. Count IV states that Plaintiff is entitled to punitive damages. *Id.* at ¶ 64.

### 1. The Scope of Defendant's Motion

Before turning to the substance of the parties' arguments, the Court must first determine the scope of Defendant's motion. Although Defendant states that it moves for summary judgment as to the entire complaint, (Doc. 26 at 2), Defendant's brief in support of the motion discusses only the pregnancy discrimination set forth in Count I, (Doc. 1 at ¶¶ 36–40). When asked at oral argument where in the brief Defendant argues in support of summary judgment as to the other counts, Defendant's counsel stated that the brief cites *Young v. United Parcel Serv., Inc.*, 575 U.S. 206 (2015), which discusses the ADA, and that the brief provides facts that go to the "core issue" of the case, which is pregnancy disability. Defendant's counsel added that the retaliation claims fail because the underlying claims fail.

Defendant's brief and reply reveals that Defendant argues for summary judgment only with respect to the Title VII pregnancy discrimination claim that is alleged in Count I of the complaint. Defendant's initial brief simply does not contain any substantive argument regarding the ADA claim alleged in Count II or any of the retaliation claims alleged in Count III. "Arguments not properly

11

presented in a party's initial brief or raised for the first time in the reply brief are deemed waived." *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009). The Court is not convinced by counsel's contention at oral argument that Defendant successfully moved for summary judgment on the ADA claim simply by citing *Young*. Indeed, *Young* is particularly ill-suited to this task because it "applies to the PDA and did not create any special considerations for ADA claims." *Monroe v. Fla. Dep't Of Corr.*, No. 18-14664, 2019 WL 6048538, at *3 (11th Cir. Nov. 15, 2019). Simply put, there is no discussion or argument for why Defendant is entitled to summary judgment on the ADA claim in Defendant's opening brief, and that argument is therefore waived.

As to the retaliation claims in Count III, the Court similarly finds no discussion or argument in Defendant's initial brief explaining why Defendant is entitled to summary judgment. Indeed, there seems to be no discussion of retaliation at all. Further, the statement at oral argument that the retaliation claims fail because the discrimination claims fail is unconvincing because "[r]etaliation is a separate offense under Title VII" and "[t]o recover for retaliation, the plaintiff need not prove the underlying claim of discrimination which led to her protest." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994) (internal quotation marks omitted). Although Defendant makes arguments about the

retaliation in its reply brief, (Doc. 31 at 12–15), those arguments are not properly before the Court because they appear for the first time in reply. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005).

Defendant has not made any arguments in its opening brief for why it is entitled to summary judgment on the ADA claims alleged in Count II or the retaliation claims alleged in Count III. As such, summary judgment as to those counts should be **DENIED**.

### 2.  Count I – Pregnancy Discrimination[2]

Defendant argues in its initial brief that Plaintiff's claim for pregnancy discrimination fails because she has no direct evidence and cannot make the required showings under the traditional *McDonnell Douglas*[3] analysis or under the modified *McDonnell Douglas* framework set out in *Young*. (Doc. 26 at 15–39). Plaintiff asserts two arguments in response: (1) she has direct evidence in the form of Uneeta Dennis' comments that Plaintiff was removed from her position because

---

[2] Count I references racial discrimination in its title, but does not mention race otherwise. (Doc. 1 at ¶¶ 36–40). This may well be a typo, as there is no discussion of race in the parties' briefs. Either way, consistent with the lack of any race arguments in the briefs, the Court does not discuss race in this Report and Recommendation.

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

of her pregnancy, (Doc. 30 at 6–7), and (2) she has presented a convincing mosaic of evidence of Defendant's discriminatory intent,[4] (Doc. 30 at 9–12). In reply, Defendant asserts that Plaintiff has presented no direct evidence of discrimination and disputes that the evidence proffered by Plaintiff comprises a convincing mosaic. (Doc. 31 at 6–12).

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The PDA "added new language to Title VII's definitions subsection." *Young*, 575 U.S. at 212.

> The first clause of the [PDA] specifies that Title VII's term "because of sex" includes because of or on the basis of pregnancy, childbirth, or related medical conditions. The second clause says that women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes as other persons not so affected but similar in their ability or inability to work.

---

[4] Plaintiff also discusses Defendant's arguments under *McDonnell Douglas*, but Plaintiff's counsel conceded at oral argument that she does not attempt to defeat Defendant's motion under the *McDonnell Douglas* burden-shifting rubric but instead relies only on the evidence of a convincing mosaic showing discriminatory intent. The Court, as such, does not undertake the *McDonnell Douglas* burden-shifting analysis.

*Id.* (internal quotations marks, alterations, and omissions omitted). In a disparate treatment claim—one in which an employer intentionally treats an employee less favorably than a similarly qualified employee outside the protected class—liability "depends on whether the protected trait actually motivated the employer's decision." *Id.* (internal quotation marks omitted). A plaintiff can prove disparate treatment either by direct evidence or by using the burden-shifting framework set forth in *McDonnell Douglas*. *Id.* at 213. However, the Eleventh Circuit has made it clear that the *McDonnell Douglas* "framework is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013). Rather, "if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker," a triable issue of fact exists. *Id.* But under any method of proving disparate treatment, a plaintiff has the burden to show that the employer took an adverse employment action. *See Wright v. Southland Corp.*, 187 F.3d 1287, 1292 (11th Cir. 1999); *see also Holland v. Gee*, 677 F.3d 1047, 1056 (11th Cir. 2012) (noting that an adverse employment action is not only an element of the plaintiff's *prima facie* case, but also of the claim itself).

15

The Court will first discuss whether Plaintiff has shown an adverse employment action and then turn to the parties' arguments regarding direct evidence and a convincing mosaic of discrimination.

### a.  Adverse Employment Action

Defendant argues that it did not subject Plaintiff to an adverse employment action because Plaintiff was not terminated nor did IILC refuse to rehire her. (Doc. 26 at 19). Rather, Plaintiff simply refused to accept FMLA leave and then refused to return to work "on her own volition." *Id.* And IILC was unable to comply with Plaintiff's requests to place her in a light duty position or put an assistant in her room. *Id.* at 19–21. In response, Plaintiff argues that Dennis "removed [Plaintiff] from her position" and that the record shows that IILC could have accommodated her requests. (Doc. 30 at 7–8). Defendant does not further address this issue in its reply brief.

An adverse employment action is "a serious and material change in the terms, conditions, or privileges of employment" that "must be materially adverse as viewed by a reasonable person in the circumstances." *Holland*, 677 F.3d at 1057 (internal quotation marks and emphasis omitted). Here, the parties do not dispute that IILC put Plaintiff on unpaid leave. (Doc. 30-1 at ¶ 13). And many courts have found that forcing an employee to take unpaid leave constitutes an adverse

employment action "because it directly affects the employee's compensation." *Miller v. Brennan*, No. 1:15-CV-0079-CC, 2016 WL 1237851, at *2 (N.D. Ga. Mar. 30, 2016) (collecting cases). Plaintiff wanted to keep working, but IILC decided to place her on unpaid leave, thus depriving her of a privilege of employment. (Doc. 30-1 at ¶¶ 13–14). Defendant may have had legitimate reasons for taking this action—indeed, it argues that it had such reasons—but at this stage of the analysis, for the purposes of determining whether there was an adverse employment action, the reason is irrelevant. Putting Plaintiff on unpaid leave constituted an adverse employment action, and the Court now turns to the parties' arguments about the reasons that motivated this adverse action.

      *b.  Direct Evidence*

Defendant initially argues that Plaintiff does not present any direct evidence of discrimination. (Doc. 26 at 16). Plaintiff in response offers Uneeta Dennis' statement to Plaintiff that she was a liability and could not work due to her pregnancy. (Doc. 30 at 7). Defendant's reply notes that the conversation in which Dennis said this comment occurred after Plaintiff first introduced the issue of liability into the employment relationship, which shows that Dennis' discussion of liability was not discriminatory. (Doc. 31 at 9).

"Direct evidence is evidence that, if believed, proves the existence of a fact without inference or presumption." *Holland*, 677 F.3d at 1055 (internal quotation marks omitted). "Only the most blatant remarks whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Id.* (internal quotation marks and alteration omitted). "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004). Context is important, so the Court sets forth the exact language of the relevant discussions.

On September 15, 2015, Plaintiff sent a text message to Shawnte Johnson stating, among other things, that "if I lose my baby due to heavy lifting and a careless administrative staff I won't be letting it ride" and that "I just spoke with my doctor today and this definitely can be a legal matter if handled wrong." (Doc. 30-1 at ¶ 10; Doc. 26-15 at 2). In a subsequent conversation, Dennis told Plaintiff that she was going to be put on unpaid FMLA leave: "So that will not only just keep you safe, but the children safe in the classroom, your baby as well. *So we don't want any liabilities and the legal actions that you had mentioned* to them that will arise or anything like that, okay." (Doc. 30-5 at 2) (emphasis added).

18

Dennis' statement is direct evidence of discrimination. Dennis told Plaintiff that IILC put her on unpaid FMLA leave because it did not "want any liabilities and the legal actions that [Plaintiff] had mentioned…that will arise." (Doc. 30-5 at 2). Viewed in a light most favorable to Plaintiff, these "liabilities" and "legal actions" refer to the text message Plaintiff sent to Johnson where she told Defendant that the "heavy lifting" restriction could turn into a "legal matter if handled wrong." (Doc. 30-1 at ¶ 10; Doc. 26-15 at 2). This exchange clearly shows a connection between Plaintiff's pregnancy—and the corresponding liabilities associated with her pregnancy-related-restrictions—and the decision to place Plaintiff on FMLA leave. And going one step further, the exchange shows that Defendant put Plaintiff on unpaid leave precisely because it did not want the possibility of liability or a lawsuit in the event that it mishandled her pregnancy-related lifting restriction. It is, in the parlance of the relevant caselaw, a blatant remark "whose intent could mean nothing other than to discriminate on the basis of some impermissible factor"—in this case, Plaintiff's pregnancy. *Holland*, 677 F.3d at 1055 (internal quotation marks omitted).

Defendant asserts that Dennis' statement does not show discriminatory motivation because Plaintiff first brought up the issue of liability. (Doc. 31 at 9). Defendant says, "Plaintiff['s] introduction of the issue of liability does not create

evidence....Her liability theory was self-induced and the Defendant cannot be held accountable for Plaintiff['s] 'threat of litigation' as a basis for its decision not to subject itself to a potential claim if...she or her child was injured." *Id*.   Defendant's argument boils down to allowing an employer to undertake an adverse employment action simply because an employee has asserted her rights under the law; Defendant put Plaintiff on unpaid leave because it did not want the "liabilities" and "legal action" that could occur if things were handled wrong. That is not the law.

In a similar case, an employer told the employee that she could not work a particular shift because the pregnant employee "was at risk to be hurt and" the employer "didn't want that for her or her unborn child, for her baby; nor did" the employer want to put the people that the plaintiff served "at risk." *Carter v. A & E Supported Living, Inc.*, No. 16-00574-N, 2017 WL 5894540, at *3 (S.D. Ala. Nov. 29, 2017). The district court held that the comment constituted direct evidence of discrimination because the employer removed the plaintiff "because of her pregnancy and/or the related 'high risk' conditions. That [the employer] may have done this out of benevolent concern for the health and safety of [the employee] and her unborn child does not excuse the discriminatory nature of its actions." *Id.* at *6 (footnotes omitted). Indeed, the PDA leaves the decision of a pregnant

woman "to continue working, to seek a work situation with less stringent requirement, or to leave the workforce," up to the woman. *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1315 (11th Cir. 1994). Defendant was not at liberty to simply put Plaintiff on unpaid leave because it did not want the potential liability or legal consequences of her pregnancy, and the fact that Plaintiff was the first to raise the legal framework matters not.

In *Torres-Skair v. Medco Health Sols., Inc.*, 595 F. App'x 847, 852 (11th Cir. 2014), the Eleventh Circuit found that a supervisor's comments that a pregnant plaintiff was "moody" and "hormonal" did not constitute direct evidence because "a factfinder still must infer that whatever discriminatory animus these comments evidence actually motivated…[the plaintiff's] placement on administrative leave." Dennis' comment here expressly makes the link that was missing in *Torres-Skair*. There are no other liabilities or legal actions related to any matter other than Plaintiff's pregnancy. No inference is needed from Dennis' statement to conclude that she put Plaintiff on FMLA leave because of the liabilities associated with her pregnancy.

Because Plaintiff has produced direct evidence of discrimination, the Court need not also analyze the matter under the framework for circumstantial evidence. *See, e.g., Newsome v. KwangSung Am., Corp.*, 798 F. Supp. 2d 1291, 1298–99 (M.D.

Ala. 2011). Nevertheless, in the event that the District Judge disagrees with the analysis set forth above regarding direct evidence, the undersigned will also consider whether Plaintiff has put forth a convincing mosaic of circumstantial evidence of discriminatory intent.

      c. *Convincing Mosaic*

Even if Dennis' comment is not direct evidence, Plaintiff prevails under a convincing mosaic theory. Defendant does not address the convincing mosaic theory in its initial brief. Plaintiff asserts it in her response and offers four pieces of evidence: (1) Dennis' comments about liability, (2) the fact that lifting was not a requirement of her job, (3) the ease with which IILC could have accommodated her by adding an assistant teacher to her class, by moving her to an assistant teacher role, or by moving her to an unfilled administrative position, and (4) the fact that IILC did not return her to work after being cleared of restrictions. (Doc. 30 at 10). Defendant's argument on the first piece of evidence is identical to its arguments regarding direct evidence: the fact that Plaintiff first mentioned liability destroys any connection to discriminatory animus in Dennis' comment. (Doc. 31 at 9). As to the second piece of evidence, Defendant argues that lifting was a practical reality of her job. *Id.* at 10. To the third, Defendant argues that any requested accommodations would have been unduly burdensome and that no

such accommodations were ever made for other employees with disabilities. *Id.* at 10–11. To the fourth, Defendant argues that Plaintiff chose not to return to work. *Id.* at 2.

As stated above, a plaintiff can survive summary judgment by presenting circumstantial evidence that creates a triable issue concerning an employer's discriminatory intent. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (internal quotation marks and alteration omitted). "A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (*en banc*) (internal quotation marks and alteration omitted). "Yet, no matter its form, so long as the circumstantial evidence raises a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper." *Smith*, 644

23

F.3d at 1328. Here, Plaintiff's first and third pieces of evidence produce a convincing mosaic sufficient for Plaintiff to survive summary judgment.

The Court has already discussed Dennis' comment (the first piece of evidence) above. Even if Dennis' comment is not direct evidence, it is strong circumstantial evidence of discrimination based on pregnancy. And the Court finds that the ease with which Defendant could have accommodated Plaintiff (the third piece) is strong circumstantial evidence as well. Plaintiff testified that she asked Defendant to put another teacher in her room and that she "probably" asked for light duty work. (Doc. 27 at 110–11). And the relevant considerations here—whether Defendant could have put another teacher in Plaintiff's room who could have lifted infants when necessary, and whether there were any open administrative positions that Plaintiff could have filled—are riddled with disputes of fact.

As noted above, Defendant did not include any facts in its statement of material facts regarding the assistant teachers and whether there could or should have been one in Plaintiff's room who could have helped lift those infants who weighed more than 15 pounds. Plaintiff, in her response to the statement of material facts, states that "each classroom is staffed with one full time lead teacher and a full time assistant teacher." (Doc. 30-1 at ¶ 3). Plaintiff relies on IILC's

24

website, which advertises that "[e]ach classroom is staffed by one full time lead teacher and a full time assistant teacher that floats among that age group." (Doc. 30-3 at 2). It is not entirely clear whether the statement on the website about an assistant in each classroom refers to the infant class—as opposed to classes for older children. *Id.* However, Defendant offers nothing in response other than a sentence in its reply brief stating that "[n]o class had a fulltime assistant." (Doc. 31 at 10). The fact is not accompanied by a citation to any evidence and there is, therefore, a dispute about whether Plaintiff had—or at least was supposed to have—a full-time assistant teacher in her room who could have helped lift when necessary.

There is also a dispute about whether there were any open administrative positions that Plaintiff could have filled during the time when her lifting was restricted. IILC sent a letter to Plaintiff's attorney stating that all of its "office work" positions were filled. (Doc. 27 at 108–09; Doc. 26-6). But Plaintiff testified that there was an open office position for a "curriculum coordinator." (Doc. 27 at 110).

Defendant has not argued why the other teacher in the classroom could not handle the lifting of any children above 15 pounds. And if lifting was required by the lead teacher, there is a dispute of fact about whether Defendant could have

moved her to an assistant teacher position[5] or an administrative position. Another district court stated the relevant inquiry in these terms:

> Terminating a pregnant employee, or forcing her to take leave, because of concern for her health or concern for the employer's potential liability, are employment decisions based upon impermissible factors. In order to justify terminating or forcing a pregnant employee to take mandatory leave, the employer must show that the leave is necessary because the condition of pregnancy is incompatible with continued employment.

*EEOC v. Corinth, Inc.*, 824 F. Supp. 1302, 1308 (N.D. Ind. 1993) (citation omitted).

The disputed evidence regarding the possibility of putting an assistant teacher in Plaintiff's room, or moving Plaintiff to an administrative or assistant-teacher position, coupled with Dennis' statement that IILC placed Plaintiff on unpaid leave to keep Plaintiff and her unborn baby safe (and because it did not want liability or legal actions) "presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith*, 644 F.3d at 1328 (internal quotation marks and alteration omitted); *see also Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1256 (11th Cir. 2012) (holding that a supervisor's "inaction in attempting to find" a light-duty job contributed to plaintiff presenting a convincing mosaic of discrimination based

---

[5] On October 28, 2015, IILC's website listed a job opening for an assistant teacher. (Doc. 30-1 at ¶ 3; Doc. 30-4 at 2).

26

on her pregnancy); *Latowski v. Northwoods Nursing Ctr.*, 549 F. App'x 478, 484–86 (6th Cir. 2013) (holding that supervisor's comment that employer "would be liable if something happened to her baby and we had allowed her to work against her doctor's advice" supported a finding that a policy to terminate all employees with doctor-imposed restrictions arising from non-workplace injuries was pretext for discrimination when taken with other comments).[6]

## III.    CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment, (Doc. 26), be **DENIED** as to Count I because Plaintiff has presented direct evidence of discrimination and, alternatively, a convincing mosaic of evidence from which a jury could infer discriminatory intent; and **DENIED** as to the remaining counts because Defendant waived its arguments as to the ADA and retaliation claims.

---

[6] Plaintiff argues that lifting was not a requirement of her position. (Doc. 30 at 10). However, the record indicates that lifting infants weighing 15 pounds or more was a practical reality of her job. (Doc. 27 at 79; *see* Doc. 30-1 at ¶ 2). Nor does the Court address Plaintiff's argument that Defendant "refused to return her to work." (Doc. 30 at 10). Plaintiff survives summary judgment based on the facts noted above when Defendant put her on unpaid leave.

This is a Final Report and Recommendation, there is nothing further pending in this matter, and the Clerk is **DIRECTED** to terminate the reference to the undersigned.

**IT IS SO RECOMMENDED,** this 21st day of January, 2020.

_____
CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE

28